Good morning, what's left of it. My name is Robert and I represent Mr. Lam. It's a very important case to him. It's a case that someone has involved, evolved over the period of time since his injury. Principally the case involves scientific standards, which has been adopted by the defendant, even though the defendant won't admit it. The defendant itself is a Army Corps of Engineers and they've been in business operating campsites since 1944, according to Mr. Suley's declaration. So that's about 70 years up to the date of the incident. Their job is to maintain a campsite and instead of stating in many words, as contained up to the specific language of the nine pages in the ANSI A300 Part 9 that deals with identification, evaluation, and mitigation of trees that are hazardous. You can see from the photographs, I believe that the defendant had in their declarations, a tree is a dangerous thing, especially if it has voids in it structurally, especially in a situation where even one of their own experts, I believe Mr. Poole, who had been a certified arborist, stated that because of this amaryllularia, trees who cluster trees with a single root ball. And if you could see in, I believe, the photographs, I'm sure your honors have reviewed the photographs as well. There is a photograph from the defendant identifying the tree and it has this huge 22-inch void in it. Mr. Chin, maybe I can get you to focus for a moment on what we're here because of the and we'll all assume trees are dangerous and that this one was particularly dangerous since it fell. My question is this, we've got at least three cases in this circuit that deal with falling trees on federal property. Maybe there's more, but Kim and Armstrong and Fernandez. So and I know two of them are memdiscs, but if you would, would you try to place this case in the spectrum of those three and tell me, falls is the wrong word, but I guess I'll use it, why it falls closer to the closer to the liability end than the non-liability end? Right, right. The discretionary function exception has been mitigated somewhat by the Kim case. Once an agency goes ahead and actually does an inspection, the rule in Kim, which is part of this district of the Ninth Circuit, states that you've got to do it in accordance with your written policy. Now the written policy is contained in EM 385 1-1, which specifically states the sections that to take a look at it. One of them was the ANSI, American National Standards Institute's tree management and safety. So it's a health and safety statute that protects not only just the health of employees, but also the health of everyone else. Well, let me ask the question a little differently. Let's assume that the government, doesn't really matter which agency, had no policy at all about inspecting trees. And the facts were otherwise the same as here. The tree fell and you could demonstrate later, at least that there was a fact question about whether or not a reasonable inspection would have shown that it was going to fall. Would the discretionary function exception apply? It may not apply, especially with the situation that there's a couple of cases, which deals with the tuition standards. Whether it's a scientific, it's been adopted by the defendants himself, this agency. That standard applies. But between the issue regarding the agencies, regulations and policies and so forth, but we'd submit that the health and safety paragraph, chapter 31 relates to a policy that may not have spelled out everything, but in the nine pages of the Kim case. The ANSI standard, as I might ask the question, the ANSI standard, according to the defendant's position, has not been adopted. It's merely referenced here. Their position is that because it's referenced, it does not require certain actions. Because they also argue there's some discretion left in that. What's your response to this argument that it's just referenced into it? My response is this. You have specific language and the word shall. The maintenance and tree removal shall be in accordance with that standard is not a mere reference. But with respect to that very thing, the ANSI A300, by its own terms, is intended to guide work practices. It doesn't say they have to do them. It's a guide. How do you say that that takes away the discretionary function? Particularly when you've got other parts of the same series of documents that talk about how important trees are and you don't want to cut them down at random and it's important for the environment and so on. I think by virtue of the fact that the Kim case states that if you have a policy, the policy doesn't state exactly when you inspect. However, once you engage in that inspection, you've got to follow the policy. But the Kim case had a specific way to analyze the trees according to the hazard. And there is no such policy in the OMP. Do you agree with that? Well, yeah, I agree with the OMP. However, the importance of how a tree is to be inspected for hazard and what can be done. So it's more inclusive. It's identical in many parts. I don't know what the seven-step plan with the Kim case was, but in the Whelan case, there was a similar situation of ratings and what have you. The ANSI A300 requires ratings as well. Here, they did nothing. We stated that they're supposed to inspect and determine whether the tree is safe for campers in a campsite with thousands of pounds and trunks and what have you. So it is a health and safety issue. It is something that I think we look to the Kim case as being important in this regard. I don't think there is a case to specify exactly how the policies are to be written. But when you deal with the Army Corps of Engineers with regards to engineering standards, the ANSI standard, according to our expert who is well qualified in the field, stated that it was the standards as far as identification, evaluation. Did your expert have special knowledge of Corps policies, of Army Corps of Engineers policies? He worked for the Forest Service before. But I don't think that is actually necessary with regards to finding or not testimony relevant at all. Wasn't that really the interpretation of agency policy, a question of law? He reviewed the evidence. I think the evidence is important. He reviewed that this defect existed for probably over 20 years. But that goes to this, whether or not there was actual negligence, or whether somebody should have seen it. Judge Smith's question was, your expert really can't establish whether this is a discretionary function or not. Kenny, isn't that a question of law? Yeah, yeah. Well, that is the question of law. And I think it in conjunction with actually the policies in question. So, so we have to, we, if, let me just ask you the question I tried to ask before slightly differently. Could the, could the government have a policy that said, look, you take your own risk when you camp in one of our forests, trees might fall on you? I think they would, they could. However, in this situation, I doubt very much that on July 4th or 5th weekend that many people would be going there. Okay, so, so it's up to their discretion whether to adopt a policy about whether to remove dangerous trees, correct? In the writing itself, Section 31 specifically states that that particular scientific standard is adopted. Well, but I guess my point is this, and I want to hear you respond to it. It doesn't matter, it seems to me, whether or not they adopted the ANSI standards or some other standard. The question is whether they adopted a policy to remove, to inspect for and remove dangerous trees. Yeah, according to the, I'm sorry. According to the, yeah, according to the declaration of their maintenance person, he was ordered to go out and look for trees that had problems. And he did it daily. And we're talking about a campsite that he walked by and saw this tree on a regular basis. He was empowered to do that. He claims there's no policy. However, the writing here on the Section 31 Well, Section 31 rather clearly seems to say to me, one should look for these hazards, including dangerous trees and remove them when they pose a danger. It doesn't have standards by which one judges when they're dangerous, assuming that there's no incorporation here. So my question is, if you, does that get you past the discretionary policy, discretionary function exception, or do you need more? It should if the policy incorporates ANSI 300, A300. Let's assume that it does not. Let's assume that it does not incorporate it. Are you then able to get past the discretionary function exception? I disagree. I think that the Section 31 does incorporate it. I know. I asked you to assume that it doesn't though. Assume that it doesn't. Then we look to the case of scientific standards. And it hasn't been a case involved, perhaps, that might have been a case involved where the I guess we're missing each other. And maybe I'll try this with your colleague and you can return to it. Okay, I want to save any time for rebuttal. Yes. You want to save any time for rebuttal? Yeah, two or three minutes. You don't have two or three minutes. You got a lot of time. You want to save? Yeah, save some time. Yes. Okay, so let's hear from your opponent and then we'll come back to you. Okay, Ms. Davis, is that correct? Yes, Your Honors. Good morning, Your Honors, and may it please the court. This court should affirm the district court's order granting defendants motion to dismiss for lack of subject matter jurisdiction based on the discretionary function exception. I'm going to go right into the cases that Your Honors brought up regarding the tree law in the Ninth Circuit to show how this case, the discretionary function exception applies. The case of Kim didn't change any discretionary function law. The Ninth Circuit reaffirmed the standards that had been announced by the Supreme Court. But made it clear that the key inquiry is looking at the policies that are in place at any particular federal site. In Kim, there were very detailed hazard tree policies in place. There was a system that was mandated in the Yosemite plan that required examination of trees for hazards and defects and a rating system from one to seven. And if the trees were rated above a certain level, they would have to be slated for some sort of hazard tree abatement. None of that is the case here in land. There were no policies in place. Well, there's a policy in place here. I'm sorry. There's a policy in place here. Nobody doubts there's a policy. The question is, what does it provide? The policy seems to say, tell me where I'm wrong. We'll inspect for hazards, including trees that might become hazards or fall down. And when they're identified, we should remove them. It doesn't have the standards by which the park ranger or somebody else will determine that. But is that a fair statement of what the policy is? Yes, Your Honor. The OMP states general policies that address a number of considerations that are in place at the park. Aesthetic, environmental, cost, visitor safety, worker safety, and all of those must be considered. So is it your position that under the OMP, let's assume that I'm a park ranger and I find a tree that's teetering on the edge. It's about to fall over into the campground. And I know if it does, it will injure people. I have the discretion then to say, well, I'm not going to do anything about it because I'm not going to do anything about it. Your Honor, the discretionary function exception clearly states that if it applies, it applies whether or not the discretion involved is abused. That's clear in the statute. And in that particular situation, unless there was a policy in place that stated that leaning trees were required to be removed immediately, the discretionary function could well apply. So assume the policy that's there in this case, the OMP policy, and that set of facts that I just gave you, even if it would have been obvious to any observer that the tree was about to fall, your view is that the discretionary function exception would still apply. If there were no policies in place that... No, no, I've asked you to assume a policy that we had in this case. If the policy was in this place, there was no mandatory or specific duty set out in the OMP that required anybody at Lake Mendocino to remove a tree that had a leaning branch. You also have some kind of a dollar limitation. I think it was $40,000 or something that was available within, I don't know, a ranger or within the park. A tree removal during the winter period, just for fear. Your Honor, I think that you're speaking to the hazard tree removal plan, whereby the park had set a general goal of removing 40 hazard trees over the time from 2013 to 2017. Yes, there was an amount slated for that hazard tree removal, but that policy didn't refer to any specific trees. It didn't note how anybody was supposed to analyze whether the trees presented a hazard. There were no writing requirements. There was no record keeping requirements. And here, the workers at Lake Mendocino testified in their declarations that they never kept written records based on their inspections of the campsites. So that hazard tree removal goal was in place, but it didn't set a policy that was mandatory or specific that would have had an impact on this particular tree. How do you deal with WISNET and O2OE? I'm sorry. Go ahead, Judge Smith. Again, do you think that with our tree law, do we have any conflict in our cases that would put us in a situation where we have to apply Miller versus Jammie and find that some or one or more of them is now not the law? No, I think that you're asking me if the cases can be reconciled, and I think that they can, because as I stated before, the KEM court did not state that there was a new discretionary function standard. It analyzes specific policy in place. The other cases that your honors mentioned, Armstrong and Fernandez, and Armstrong, which took place at its forest service, the court held that it was not the law. It held that the discretionary function exception did apply. In Fernandez, the discretionary function exception did not apply. Again, it was because of specific facts in that particular case. In that case, the tree in question had been identified as hazardous, and there was a policy in place that stated once a tree was identified as hazardous, it had to be removed within a specific time. And this court found that where there was a mandatory duty, then the agency was required to comply with that mandatory duty, but none of that is true here. So, I think that the case law can be reconciled. Let me ask you on that front, and I recognize Armstrong and Fernandez are mem disps, and maybe we don't have to reconcile them with KEM, but can you deal with Wisnat and O'Toole? There were both cases in which there was no duty imposed by regulation or policy, but we still found that the discretionary function exception didn't apply. Excuse me, your honor. I'm sorry, I have to think about those particular cases. Were there particular cases that parts of that case that you were thinking about? Wisnat is the case involving the illness that somebody got from being exposed to toxic mold, and there was no statute, policy, or regulation, but we nonetheless said keeping somebody safe from the toxic mold didn't fall within discretionary function exception. The same thing was true in O'Toole. I'm sorry, go on, your honor. O'Toole is the irrigation system that falls into disrepair. Again, no regulation or specific set of guidelines about keeping it in repair, and we still said it was not inside the discretionary function exception. Maybe I've caught you by surprise with those cases, but they were cited in the briefs. So in O'Toole, O'Toole doesn't apply because that was the creation of a system, and there's case law that states where there's a created hazard, for example, the case that involves the transformer that was hidden beneath the snow. Where there's a created hazard, the discretionary function doesn't apply. That differs from the situation here because it wasn't a created hazard. It was a natural tree that had been there prior to the campground being established. So that's how O'Toole would be distinguished. In Wisnet, I think that that may have been the case that took place inside of a prison. And my recollection is that there had been a duty that had been adopted regarding the safety of the inmates. And that was a duty that couldn't be abrogated or not taken in place. But that's different than natural forest land where the agency hasn't taken on that kind of particular duty. Can I ask a question, please? Sure. Step two of the Galbraith-Berkowitz analysis. We're talking about policy judgments here for you to prevail. And we need to understand why, what took place in general in the application of the OMP. How is that susceptible to policy judgment? I'm interested to know what are the policy issues related to keeping the trees out there? The policy issues in terms of keeping the trees there are that they're clearly written in the OMP. Specifically that there are aesthetic and environmental concerns. In addition to other concerns such as resource allocation, safety for visitors and for workers. The Army Corps of Engineers mission is to maintain infrastructure projects. The recreation system is secondary to that. The campgrounds were set up in order for recreation. But they are subject to a great many policies apart from just safety of the visitors to the campsite. The OMP is replete with references to this. For example, birds that might be nesting in trees. The fact that mature trees, if they are removed, will take many years to replace. And all of those sorts of policies are different from the kind of scientific and technical consideration that this court has found defeats the discretionary function exception. And how is that different? The last part you said about the scientific and professional, what's the difference there? So, for example, in bear medicine, which is the case that scientists decided by plaintiff, where this court found that there were no policy implications in terms of the tree issue. There, there was a contract in place that mandated certain standards with regards to the trees that were being logged. And that those standards weren't adhered to. And therefore, there were no separate policy considerations in terms of whether or not the tree should have been removed. Another case that is an example of that is Van Orden, where the tree fell into, they were logging trees and the tree fell into somebody's yard. This is also a case that's relied upon by plaintiff.  Whether or not when the tree was cut down, it would fall a certain way, how tall it was and whether or not it would have hit the neighbor's backyard. There was no sort of policy that could have been at play there that would have defeated the discretionary function exception. That answer your question, Judge? Yes, it does. Thank you very much. And Your Honor, I need to apologize because I was thinking of Wismet, Wismet is the case which involves the molded side of the commissary. Well, no, it's a commissary workup anyway. Yes, in the prison. And my apologies for that. I confused the two cases. But that case, again, it's different. It's a creative hazard by the government in terms of adhering to safety guidelines that were in place. And I think that those are fundamentally different when you're talking about cases on open land, where the government hasn't been involved in creating the hazard in any way. Well, that's why I wanted to ask you about Wismet, because the court's really careful to say there were no safety regulations in place. Yes, but the court also, excuse me, Your Honor, I didn't mean to interrupt. No, go ahead, please. The court also made it clear to say that cleaning up mold involved only professional or scientific judgment and wasn't subject to any sort of policy consideration. There could be no environmental or resource allocation or aesthetic policies that are in place here that impact whether or not mold should be cleaned. So for that reason, I think Wismet is easily distinguishable from this case. Any other questions that my colleagues have for counsel? Counsel, we've got a little time left. You don't have to take it, but if you wish, you can do so. I'll be brief. Thank you very much. I'm sorry. Not you, Mr. Chambliss. I'm sorry. Oh, okay. David still has a little time. I apologize. Yes, Your Honor, I would just like to speak briefly to the issue of the ANSI 300, because plaintiff seems to be relying primarily on that, on the fact, on the issue that he believes that there were standards that apply here. There are only two references to the ANSI tree standards. They're not in the OMP. They're in an engineering manual that by its state applies to safety of Army Corps of Engineer employees and not to identification of hazard trees. Even so, the only specific reference to the ANSI within the document itself is in regards to how a tree should be climbed and whether or not spurs should be used. But in no way does it incorporate any potential guidelines from the ANSI regarding identification or mitigation of hazard trees. Okay. Ms. Davis, I think you have now, in fact, completed your time. Thank you for your argument. Mr. Chen, you have a little bit of rebuttal time. Thank you very much. I would ask that Your Honors take a look at the ANSI attached to the document. It is in volume one of the excerpts of records. Many of these cases have multiple policies that the agencies have. I think the OMP is one of the policies. I think that the health and safety manual, which is the health and safety not just for employees, but health and safety of the campsite or whatever project that's involved, it has been adopted. I wouldn't ask for credentialed professionals, and that would be 31A-31A01. Take a look at the specific language. There's a directive there, shall, not should, not maybe. That directive requires you to take a look at what is entailed in the ANSI A300. I guess your time is up. Mr. Chen, let me ask my colleague whether either has any additional questions. No, I do not. All right. We thank both counsel for your argument in the case. It's very helpful. The case just argued, Lamb v. USA, is submitted, and the court stands in recess for the day, and our tech people will put us back into the voting room. Thank you, counsel. Thank you, your honors.
judges: M. Smith, Jr., Hurwitz, Royal